IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In Re TQ DELTA and JASON H. VICK. | Civil Action No. 17-mc-328-RGA |

## MEMORANDUM OPINION

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE; James P. Murphy, MCANDREWS, HELD & MALLOY, LTD, Chicago, IL; Patricia Y. Ho, SHERIDAN ROSS PC, Denver, CO, attorneys for Plaintiff TQ Delta and nonparty Jason H. Vick.

Jody C. Barillare, MORGAN LEWIS & BOCKIUS LLP, Wilmington, DE; Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE, attorneys for Defendants.

October 17, 2018


**ANDREWS, U.S. DISTRICT JUDGE:**

Pending before the Court is Plaintiff TQ Delta and nonparty Jason H. Vick's Motion to Quash Defendants' subpoenas to Jason H. Vick. (D.I. 1). The parties have fully briefed the issues. (D.I. 1, D.I. 22, D.I. 23). For the following reasons, the Court grants in part and denies in part Plaintiff and Vick's Motion to Quash.

# I. Background

Plaintiff TQ Delta ("Plaintiff") and Defendants Pace PLC, 2Wire, ZyXEL Communications, Inc. ZyXEL Communications Corporation and Adtran ("Defendants") are engaged in ongoing litigation within this District. (Case Nos. 13-cv-1835-RGA, 13-cv-2013-RGA, 14-cv-954-RGA, and 15-cv-121-RGA). On October 27, 2017, Defendants served four subpoenas in those actions on nonparty Jason H. Vick ("Vick") in the United States District Court for the District of Colorado. (D.I. 1, Ex 1.) The subpoenas were for deposition testimony and production of documents. (*Id.*). On November 10, 2017, Plaintiff and Vick filed a motion to quash Defendants' subpoenas and to transfer the motion to quash to the United States District Court for the District of Delaware, where the litigation is ongoing. (D.I. 1). On December 4, 2017, the Motion to Quash was transferred to this District. (D.I. 14).

Vick is an attorney at Sheridan Ross, PC, a law firm in Denver, Colorado. (D.I. 3 ¶ 1). Vick and the Sheridan Ross law firm have represented Plaintiff and Plaintiff's predecessor-in-interest, Aware. (*Id.* ¶¶ 4-5). During these representations, Vick has prosecuted numerous patents for both Plaintiff and Aware, including the patents-in-suit. (*Id.*).

# II. Discussion

"On timely motion, the issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply, . . . (iii) requires disclosure of privileged or other protected

1

matter . . . or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3). "The party seeking to quash the subpoena bears the burden of demonstrating that the requirements of Rule 45 are satisfied." *Malibu Media, LLC v. John Does 1–15*, 2012 WL 3089383, at *5 (E.D. Pa. 2012). "Courts have described this as a heavy burden." *Id.*

Plaintiff and Vick assert that the Court should grant the motion to quash for the following reasons: (1) the vast majority of the documents and information requested are subject to attorney-client privilege; (2) any non-privileged relevant information that may be covered by the request can be obtained from more convenient sources; (3) compliance with the subpoenas will subject Vick to undue burden and (4) the subpoenas do not allow reasonable time to comply. (D.I. 1). Plaintiff and Vick further request that the Court sanction Defendants. (*Id.* at 14).

Defendants argue that the motion should be denied because (1) Plaintiff lacks standing to challenge the subpoenas; (2) the requested discovery is relevant to the ongoing litigation; (3) the failure to provide a privilege log defeats the claim of attorney-client privilege; and (4) Plaintiff and Vick cannot show that *every* question asked at a deposition would be privileged. (D.I. 22). Defendants also assert that there are no grounds for sanctions. (*Id.* at 14).

### A. Plaintiff's Standing

Defendants assert Plaintiff lacks standing to move to quash a nonparty subpoena. Plaintiff's standing is irrelevant. The motion to quash is made by both Plaintiff and Vick. (D.I. 1). As the nonparty to whom the subpoenas are directed, Vick clearly has standing to move to quash the subpoenas.

### B. Whether the Subpoenas Provided a Reasonable Time for Compliance

Vick contends that the subpoenas failed to allow a reasonable time for compliance. (*Id.* at 13). Neither Rule 45 nor the Third Circuit Court of Appeals have provided a firm rule

2

regarding the number of days that constitute a reasonable time. Here, Vick had from October 27, when the subpoenas were served, to November 13, the day of the deposition to supply the related documents and give a deposition. (*Id.* at Ex. 1). Vick maintains that this request is unreasonable because the document requests are "excessively broad, requesting 'All documents and things' related to all thirty-eight patents asserted and all related patents." (*Id.* at 13). However, Vick has not requested a modification of the time frame for compliance, but to completely quash the subpoena. Because I can lengthen the time frame of compliance, I decline to quash the subpoena on this ground.

### C. Undue Burden

Vick also claims that the breadth and scope of the subpoena is unduly burdensome. (*Id.* at 11). Rule 45(d)(3)(A) requires courts to "quash or modify a subpoena that . . . subjects a person to undue burden." "When analyzing whether a subpoena places an undue burden on a nonparty, courts consider issues such as relevance, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity with which the documents are described, and the burden imposed in responding." *Ebert v. C.R. Bard, Inc.*, 2014 WL 1365889, at *2 (M.D. Pa. Apr. 17, 2014). Here, the subpoenas are extraordinarily broad. They ask for "all documents and things" received by either Vick or his law firm from Aware, Plaintiff, or any Inventor regarding the 38 asserted patents and any possibly related patents and the prosecution of those patents. They also ask for "all communications" between Vick or his law firm and Aware, Plaintiff, or any inventor regarding the 38 asserted patents, any possibly related patents, and the prosecution of those patents. Vick has prosecuted over 600 patents for Plaintiff and Aware. Therefore, the possible number of patents covered by the subpoenas is significantly higher than the 38 asserted patents. Considering Rule 26(b)(1)'s

3

proportionality requirement, the reach of the subpoenas is unduly broad. The subpoenas do not describe the documents or communications they seek with any particularity. Nor are the requests limited in time, spanning a possible twenty years of documents and communications. The burden imposed on Vick in responding to these document requests and preparing for a deposition is quite high.

Moreover, many of Defendants' requests are for information that could be acquired from either the Plaintiff itself or publicly available sources. A significant number of the requests target documents or communications from Plaintiff itself, rather than a nonparty.[1] Additionally, many of the requests encompass publicly available information.[2] Therefore, the breadth of the requests combined with the lack of limitation or specificity places an undue burden on Vick if he must comply with the subpoenas.

### D. Attorney-Client Privilege

Vick further asserts that the subpoenas are directed to documents and communications that are protected by the attorney-client privilege. Vick clearly has standing to assert the attorney-client privilege on behalf of both Aware and Plaintiff. Under the attorney-client privilege, "the giving of professional advice" by the lawyer to the client and "the giving of information to the lawyer to enable him to give sound and informed advice" are protected. *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). Defendants respond that Vick must provide a privilege log to claim the privilege. However, "[i]f a broad discovery request is made . . . and the responding party believes in good faith that the production of [the requested]

---

[1] Document Request Nos. 2, 5, 8, 11, 20, 23, 26, 29, 32, 35, 38, 41, 44, 47, 50.
[2] Given that the requests relate to the prosecution of the asserted patents and related patents, the Defendants can acquire a significant amount of the requested information from the public prosecution files of the patents.

4

documents . . . would be unduly burdensome, it should make its objection to the breadth of the request." Fed. R. Civ. P. 26(b)(5) Adv. Comm. Note to 1993 Ams. Vick has done so here. (D.I. 1). For the reasons stated above, the creation of a privilege log would itself be unduly burdensome here. Therefore, the lack of a privilege log will not defeat Mr. Vick's claim of attorney-client privilege.

Defendants have attempted to articulate relevant non-privileged information that the subpoenas seek from Vick. They identify the following categories of information: (1) "percipient knowledge of decisions made during prosecution and of events such as interviews with Examiners;" (2) "communications relating to the patents-in-suit with other non-parties, including the former owner Aware and the named inventors, and with TQ Delta;" (3) knowledge regarding "standards essentiality[; (4)] knowledge of participation by Aware or named inventors in standards setting organizations[; (5)] knowledge of the identity of any prior art standard Aware or the named inventors were aware of during the prosecution;" and (6) "knowledge of Aware's business model."[3] (D.I. 22 at 6). Defendants assert that the first two categories are "highly relevant to issues in the underlying patent litigations, including invalidity." (*Id.*). The third and fourth are asserted to be relevant to whether the patents-in-suit are essential to standards adopted by the International Telecommunication Union. (*Id.*). The fifth is alleged to be relevant to Defendants' identification of certain standards as prior art. (*Id.*). The sixth is asserted to be relevant to damages. (*Id.*).

---

[3] The enumerated relevant information is far narrower than the overbroad requests contained in the subpoenas. This is further evidence that the document requests were not articulated with particularity.

5

The first two categories of purported relevant information that Defendants articulate either fall within the attorney-client privilege claimed by Vick or are reflected in the public prosecution file. To seek information about decisions made during patent prosecution is to seek the communications between the attorney and client in determining how best to prosecute the patent. This is a clear example of legal advice intended to be protected by the attorney-client privilege. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (recognizing that information is often provided to counsel "for legal advice on patentability or for legal services in preparing a patent application"); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480 (E.D. Pa. 2005) ("communication is privileged as long as it was made for the purpose of securing legal advice or legal services"). Similarly, communications between Vick and Plaintiff or Aware or regarding the patents, the preparation of the application, the filing of the application, and the prosecution of the application are also protected by the attorney-client privilege. Furthermore, interviews with patent examiners and the content of those interviews are part of the public record in patent prosecution histories and therefore, Defendants do not need this discovery from Vick. MPEP § 713.04 (9th ed. Rev. 8, Jan. 2018).

However, enumerated items 3-6 appear to be both relevant and targeted at non-privileged factual information, rather than communications between attorney and client during patent prosecution. Defendants have asserted an affirmative defense that "[t]he patents-in-suit are unenforceable because [Plaintiff] or its predecessor-in-interest had an obligation to disclose them to the [International Telecommunication Union] in the course of the standard-setting process, [Plaintiff] was aware of its disclosure obligations, and [Plaintiff] failed to disclose the relevant patents." (No. 13-cv-1835-RGA, D.I. 44 ¶ 172). The information sought appears to be relevant

6

to this affirmative defense.[4]  Additionally, Defendants have stated that Aware's business model is relevant to the issue of damages.  (D.I. 22 at 6).   Plaintiff and Vick assert that the factual information sought is still privileged "because any such 'knowledge of Aware' would only be known to [] Vick, if at all, because of his representation of his client."  (D.I. 23 at 9).  They also assert that if any such information is relevant, that information "should be obtained from Aware, not its counsel." (*Id.* at 10.).   However, Aware is also a nonparty here, and as Defendants point out, underlying facts are not protected under the attorney-client privilege.  *Upjohn*, 449 U.S. at 396.  Therefore, the subpoenas will be modified to permit discovery solely of (1) documents or communications related to standards essentiality of the asserted patents, (2) participation of Aware or named inventors in standards setting organizations, (3) the identity of any prior art standard Aware or the named inventors were aware of during the prosecution of the asserted patents, and (4) Aware's business model.   Vick is free to assert the attorney-client privilege for any relevant documents or communications by providing a privilege log and by objecting to questions at his deposition.

### E. Sanctions

Rule 45(d)(1) provides,

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost

---

[4] The parties dispute whether Defendants have properly pled inequitable conduct by including an affirmative defense of unenforceability that would support a subpoena targeted to nonpublic information that Vick may have.  (D.I. 1 at 12-13; D.I. 22 at 6).  The Court notes that the time to amend pleadings has passed and that inequitable conduct must be pled with particularity under Federal Rule of Civil Procedure 9(b).  *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).  However, because there are affirmative defenses asserted to which the articulated information is relevant, the Court declines to address whether inequitable conduct has been properly pled.

earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

"It does not automatically follow that because the Court has [modified] the subpoenas [Defendants] acted unreasonably in issuing or relying upon them." *Havens v. Maritime Comm'ns/Land Mobile, LLC*, 2014 WL 2094035, at *5 (D.N.J. May 20, 2014); *see also SAJ Distributors, Inc. v. Sandoz, Inc.*, 2008 WL 2668953, at *3 (D.N.J. June 27, 2008) ("attorney fees are generally awarded only in the most egregious of circumstances, such as when a party has clearly breached Rule 45"). Here, it does not appear that Plaintiff and Vick attempted to meet and confer with Defendants before filing the motion to quash. (D.I. 22 at 14). Moreover, Defendants have stated that they are willing to meet and confer with Plaintiff to modify requests. (*Id.* at 12). Additionally, Vick has not alleged that he has undertaken the expense or inconvenience of compliance. Therefore, the Court does not discern good reason to impose sanctions upon Defendants and the request for sanctions is denied.

## III.   Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiff and Vick's Motion to Quash. An accompanying order will be entered.